LEONARD S. VAN DYKE, RELATOR, v. THE BOARD OF COMMISSIONERS OF LONG BRANCH.

Submitted December 2, 1915—Decided February 18, 1916.

1. The Pension act of March 30th, 1911 (*Pamph. L., p.* 104), is retrospective as well as prospective.
2. The Long Branch commission was created by virtue of *Pamph. L.* 1867, *p.* 976. The relator was appointed a member of its police force under an ordinance adopted pursuant to powers conferred by *Pamph. L.* 1875, *p.* 477, and was thereafter reappointed from year to year. The commission territory was incorporated as the city of Long Branch by *Pamph. L.* 1904, *p.* 376, and the city adopted the General act of 1903 (*Pamph. L., p.* 292), as amended by *Pamph. L.* 1904, *p.* 346, and elected relator a member of the police force of the new city. On November 26th, 1913, the city adopted by ordinance the Pension act (*Pamph. L.* 1911, *p.* 104), as amended in 1912. *Pamph. L., p.* 669. The relator has honorably served on the police force of the municipality formerly called the Long Branch commission and now the city of Long Branch continuously for a period of twenty years and has at-

tained the age of sixty years. *Held,* that relator is within section 1 of the Pension law of 1911 (*Pamph. L., p.* 104) and by its terms is entitled to be retired upon half pay, although the present city does not include all the territory of the old Long Branch commission and does embrace some outside territory.

On rule to show cause why a writ of *mandamus* should not issue.

Before Justices GARRISON, TRENCHARD and BLACK.

For the relator, *Gilbert Collins.*

For the respondent, *William A. Stevens* and *William L. Edwards.*

The opinion of the court was delivered by

TRENCHARD, J. The relator, a member of the police force of Long Branch, who had honorably served on such force continuously for a period of twenty years and had attained the age of sixty years, applied, on September 15th, 1915, to the board of commissioners of Long Branch (a city governed by the Walsh act) for retirement on half pay in pursuance of the Pension act of March 30th, 1911 (*Pamph. L., p.* 104), as amended in 1912. *Pamph. L., p.* 669. The commissioners refused to retire him, on the ground that the time during which the petitioner had served as a member of the police force of the Long Branch commission (originally called the Long Branch police, sanitary and improvement commission) could not be reckoned as a part of the twenty years' service. The petitioner then obtained this rule to show cause why a *mandamus* should not issue commanding the board of commissioners to retire him on half pay.

Section 1 of the act of 1911 (*Pamph. L., p.* 104) provides that "in all municipalities of this state, other than cities of the first class, any member of the police force thereof who shall have honorably served on such force for a period of twenty years, and shall have attained the age of sixty (60)

years, may be retired upon half pay, or, upon his application, shall be retired upon half pay."

It appears that the board of commissioners of the city of Long Branch, on November 26th, 1913, adopted by ordinance the provisions of the Pension act pursuant to section 8 as amended in 1912. *Pamph. L., p.* 669.

We now propose to discuss and decide the questions argued, and those only.

*First.* The city contends that "the Pension act of 1911 is not retrospective."

But the case of *Pearce* v. *Board of Education of Brick Township,* 89 *Atl. Rep.* 1026, is authority to the contrary. There this court said: "The statute (*Pamph. L.* 1912, *p.* 89) declares that 'any teacher, principal or superintendent who shall have been employed,' and clearly applies to persons in that class when the law was adopted. *It is retrospective as well as prospective,* and to limit it to prospective cases, as the contention of the defendant would require, because there was then none within the class, would not, in our opinion, carry out the legislative intent, and such a construction should be put upon the statute as will best answer the intention of the makers." In view of this declaration, it seems clear that the contention of the city, that the act of 1911 now *sub judice* is prospective only, is not well founded. The statutes are similar in phraseology, and the doctrine of *stare decisis* controls in this court. Accordingly, we hold that the Pension act of 1911 (page 104) is retrospective as well as prospective.

*Secondly.* The only other contention made by the city is this: "If the act be deemed to be retrospective, it cannot be said that the legislature intended it to include service rendered as an officer of the 'Long Branch commission,' prior to the date of the passage of the incorporating act of the city of Long Branch."

We think there is no merit in this contention, for reasons we will now state.

It should be noticed that the Pension act is not limited to cities; it applies in *all municipalities* other than cities of the first class, and the changing form of any given municipality

having a police force cannot be made the test of the applicability of the statute.

The Long Branch police, sanitary and improvement commission was created in 1867. *Pamph. L., p.* 976. It embraced territory now within the limits of the present city of Long Branch, and it had a variety of municipal powers to be exercised by ordinance. Among these were police powers. By a supplement of 1875 (*Pamph. L., p.* 477), enacted before the constitutional restriction on special legislation for towns and counties, the powers of the commission were enlarged, and one expressly given was, "to establish, regulate and control a day and night police, and to regulate and define the manner of their appointment and removal, their duties and their compensation." Under this power an ordinance was passed on December 12th, 1883, in which it was, among other things, ordained: "Section 17. The board of commissioners shall from time to time appoint a captain of police and as many policemen as they may deem necessary, who shall constitute the police department of 'the Long Branch commissioners.'"

Under this ordinance the relator was appointed a member of the police force. It is noteworthy that no other ordinance has ever been passed either by the commissioners or by the city that succeeded them.

It is true that the commissioners did not have complete autonomy, the territory committed to its partial government being within the township of Ocean, which, for general township purposes, retained some governmental powers; but within such territory, and within the scope of the powers granted, the commissioners were supreme and exclusive, and police powers were within their authority. It was the common case of *imperium in imperio*, lucidly explained and vindicated by Mr. Justice Depue, in *State* v. *Troth*, 34 *N. J. L.* 377.

In 1899 (*Pamph. L., p.* 81), the title of the act of 1867 was changed so as to read, "An act to establish the Long Branch commission;" and it was enacted as follows:

"The municipality created by said act" (of 1867) "shall be hereafter known as the Long Branch commission, and by, in and under such name the said municipality shall continue to

possess, enjoy and exercise all the powers, privileges and franchises conferred upon it by said act and the several acts supplementary thereto, and shall continue to be subject in all respects to the regulations, limitations and restrictions in said act and the acts supplementary thereto contained."

We have not stopped to inquire whether or not this supplement was constitutional. In any case, it was declaratory of the legislative idea that the Long Branch commission was a *municipality*, and it must be taken into account in interpreting the act of 1911, which legislated for all municipalities other than cities of the first class.

In 1904 (*Pamph. L., p.* 376), by the passage of a special law, duly advertised, the territory, "including the municipal division known as 'the Long Branch Commission,' and adjacent territory" (describing the whole by metes and bounds), was incorporated as a city to be known as "Long Branch." It appears that the new city did not include all of the territory in the Long Branch commission, and did include outside territory within the township of Ocean.

The newly-incorporated city of Long Branch adopted the general act of 1903 (*Pamph. L., p.* 292), as amended in 1904 (*Pamph. L., p.* 346), relating to, regulating and providing for the government of cities, which act conferred full governmental powers, including the establishment and regulation of a police force, but, as above stated, the city never adopted any ordinance. It simply continued the police force theretofore existing in "the Long Branch Commission."

It is perfectly plain, therefore, that the present city of Long Branch has a police force, and that the relator has been in continuous service as a member thereof in territory now within the city limits and in a *municipality* of which the present city is the legitimate successor, for more than twenty years. The Pension act, therefore, is, by its express terms, clearly applicable to the case of the relator.

The fact that for some years appointments to the police force in the old Long Branch commission were from year to year, and the fact that on May 4th, 1904, the commissions of all police officers theretofore issued were revoked, are imma-

terial. The relator was always reappointed, and, contemporaneously with the revocation of his former commission, he was elected and commissioned as a member of the police force of the new city. His service has been *continuous* without any interruption whatever for more than twenty years, and there is no contention to the contrary.

The circumstance that the present city does not include *all* territory of the old Long Branch commission, and does embrace some outside territory, is also immaterial. The relator has been a member of the police force for more than twenty years of the municipality formerly called the Long Branch commission, and now the city of Long Branch, and this municipality has always had police powers and maintained a police force. Change of boundaries, either in curtailment or enlargement, could not affect his *status* as a member of the police force of "Long Branch." It cannot be that every time territory is taken from or added to the city of Camden, for example, a new term of twenty years would begin to run and would have to be completed before the Pension act of 1911 would be applicable to the changed city. The essential thing, in the present case, is that the *municipality*, in which the relator has served for more than twenty years continuously, still exists, although, in its present form as the city of Long Branch, its territory has been slightly diminished in one direction, and somewhat enlarged in another direction. We do not need to inquire whether the outside territory in the township brought into the present city of Long Branch had or had not a police force. If it had, and was a *municipality*, then its police officers would come within the Pension act; if it had no police force, or was not a municipality within the purview of the Pension act, that law would not be operative. That speculative question has no place in the present proceeding. The relator was never a policeman in this outside territory. His service has always been within the *municipality*, now the city of Long Branch. The decision in *Pearce v. Board of Education of Brick Township, supra,* is decisive in favor of the present relator, also upon this phase of the case. The present city of Long Branch includes territory in which

relator had continuously been a policeman, just as the township of Brick included different school districts in which Pearce had been a teacher. It was held not to be essential that the service should have been rendered for twenty years after the consolidation into one district, namely, the township, of the various districts in which he had served as teacher. What the court sought was to find the corporate entity from which he had a right to seek retirement on pension. In the present case, that is the city of Long Branch. The fact that the present city of Long Branch includes territory not within that of the municipality called the Long Branch commission, is immaterial under the *Pearce* decision, for none of the school districts in which Pearce had served was coterminous with Brick township; each school district was much smaller in extent. The School Pension act imposed upon territory outside of any school district in which Pearce had served a burden of part of his pension, but that was held to be no objection. The test was whether at the time of the adoption of the act he was serving within the district—that is, the township from which he sought retirement. The fact that a part of the old Long Branch commission was left out of the territorial limits of the city of Long Branch when incorporated in 1904 (*Pamph. L., p.* 376), is by parity of reasoning immaterial; but it appears that what was left out was so inconsiderable as not to be worth serious attention. *De minimis non curat lex.* Both the title and enactment declare that it was the legislature's purpose to include the whole of the municipality or municipal division known as the Long Branch commission and some adjacent territory. The reason for omitting the small strip at the northeast corner of the territory of the Long Branch commission was to avoid bisecting a small tract of land to the inconvenience of the owner. The omitted strip now forms a part of the borough of Monmouth Beach.

These conclusions dispose of all questions argued, and we have not considered and do not decide any others.

The rule to show cause will be made absolute, and a peremptory *mandamus* will issue accordingly, with costs.